UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

|  |  |
|---|---|
| EMC MORTGAGE LLC (formerly known as EMC MORTGAGE CORPORATION)<br><br>Plaintiff,<br><br>v.<br><br>CENTURY MORTGAGE COMPANY,<br><br>Defendant. | CASE NO. _3:16-cv-416-GNS_<br><br>Electronically Filed |

## COMPLAINT

Plaintiff EMC Mortgage LLC ("EMC") (formerly known as EMC Mortgage Corporation), for its complaint against defendant Century Mortgage Company ("Century"), alleges as follows:

## NATURE OF THE ACTION

1. This case arises from Century's refusal to honor its contractual obligations to indemnify EMC for at least $1,037,607 in losses from defective mortgage loans that Century sold to EMC and that EMC was subsequently required to repurchase from third parties or to compensate those parties for their losses on the loans.

2. Century sold the mortgage loans at issue in this case to EMC pursuant to a Mortgage Loan Purchase Agreement, dated as of February 1, 2005 (the "MLPA") and the incorporated EMC Seller Guide, as amended from time to time (the "Seller Guide," and together with the MLPA, the "Agreement"). The MLPA is attached hereto as Exhibit A-1. An excerpt of the Seller Guide is attached hereto as Exhibit A-2.

3.      In the Agreement, Century made numerous representations and warranties to EMC about the loans Century was selling. These included, among many other things, representations by Century that the origination and characteristics of the loans complied with applicable underwriting guidelines and trade stipulations, that information relating to the loans provided by Century was accurate, and that there was no fraud, error, omission, misrepresentation, negligence or similar occurrence on the part of any party involved in the origination of the loans. Century promised, among other things, to indemnify EMC for all claims, losses, forfeitures, fees and expenses in any way relating to alleged breaches of Century's representations and warranties.

4.      EMC purchased mortgage loans from Century for two primary purposes: (i) securitization into various residential mortgage-backed securities ("RMBS") transactions or (ii) whole loan sales to the Federal National Mortgage Association ("Fannie Mae") or the Federal Home Loan Mortgage Corporation ("Freddie Mac" and, together with Fannie Mae, the "GSEs"). Relying on the representations and warranties provided by Century and Century's commitment to indemnify EMC for any alleged breaches of them, when EMC sold the loans it had purchased from Century to RMBS trusts or GSEs, EMC made representations and warranties to the RMBS trusts and GSEs that were materially identical to (and in some instances narrower than) the representations and warranties that Century made to EMC about the same loans.

5.      Pursuant to the agreements governing EMC's resale of the Century loans to the RMBS trusts and GSEs, in the event that any party discovered a breach of the representations and warranties as to any loan, which defect could not be cured, and such breach had the requisite effect on the interest of the RMBS trust or the GSE, the governing contracts obligated EMC to repurchase the defective loan or to compensate the RMBS trust or GSE for its losses on that loan.

6. It turns out that Century's representations and warranties to EMC were in many respects not true. As a result, EMC was required to repurchase a significant number of Century loans from RMBS trusts and the GSEs or to compensate them for their losses on the loans at a cost of more than $1,037,607, before adding interest and the substantial fees and expenses that EMC incurred in addressing those breaches.

7. A list of loans sold by Century to EMC pursuant to the Agreement, and subsequently sold to RMBS trusts or GSEs, is attached hereto as Exhibit B. The original principal balance of these loans in aggregate exceeds $1,300,030.

8. Century has refused to indemnify EMC for the losses resulting from these breaches and the damages that EMC has incurred as a result, despite its obligation to do so and despite EMC's timely requests that it do so.

## THE PARTIES

9. EMC is a limited liability company organized under the laws of the State of Delaware, and its principal place of business is Lewisville, Texas. EMC's sole member is The Bear Stearns Companies, LLC, whose sole member is JPMorgan Chase & Co. JPMorgan Chase & Co. is a Delaware corporation with its principal place of business in New York and is therefore a citizen of Delaware or New York, as defined by 28 U.S.C. § 1332. Accordingly, EMC is a citizen of Delaware or New York. At all relevant times, EMC was in the business of purchasing residential mortgage loans and sponsoring securitizations of such loans.

10. Defendant Century is a Kentucky corporation with its principal place of business in Louisville, Kentucky. At all relevant times, Century was in the business of originating and selling residential mortgage loans.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000.00 exclusive of costs and interest and there is complete diversity of citizenship.

12.     This Court has personal jurisdiction over Century because Century is organized under the laws of Kentucky, and Century has its principal place of business in Kentucky.

13.     Venue is proper in the Western District of Kentucky pursuant to 28 U.S.C. § 1391 because Century resides in this venue and is subject to personal jurisdiction here.

## FACTUAL BACKGROUND

14.     On February 1, 2005, Century and EMC executed the Agreement pursuant to which EMC purchased mortgage loans from Century.  The Agreement included numerous representations and warranties made by Century regarding the characteristics of the loans sold and the manner in which they were originated.

15.     As a correspondent lender, Century was responsible for locating and collecting information from the borrower, verifying its accuracy, underwriting the loans based on the agreed-upon guidelines, and funding the loans. Century was the servicer of the loans until they were sold to EMC.

16.     Under Section 11.03.02 of the Seller Guide, Century agreed to indemnify EMC for *any losses* suffered by EMC in any way related to any breaches of the representations and warranties it made to EMC:

> In addition to such cure and repurchase obligation, the Seller shall indemnify EMC and hold it harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from any assertion based on, grounded upon or resulting from a breach or alleged breach of any of the representations and warranties contained in this Chapter 11.

17.     In reliance on Century's representations and warranties in the Agreement, and on Century's promise to indemnify it for losses incurred as a result of Century's sale of loans in breach of those representations and warranties, EMC purchased mortgage loans from Century.

18.     When it sold loans to EMC, Century was fully aware that EMC intended to securitize some or all of the loans or sell them to third parties, including RMBS trusts and the GSEs.  Century was fully aware that, in connection with those transactions, EMC would make representations and warranties similar to those Century provided to EMC. In fact, Century explicitly acknowledged this in the Agreement:

> The Seller acknowledges that with respect to some or all of the Mortgage Loans, EMC intends to effect one or more Whole Loan Transfers and/or one or more Pass-Through Transfers.  With respect to each Whole Loan Transfer or Pass-Through Transfer, as the case may be, entered into by EMC, the Seller agrees . . . to restate, for the benefit of the owners of the Mortgage Loans, the representations and warranties contained in Chapter 11 of the Seller Guide. (Seller Guide § 13.05.)

19.     Thus, not only was Century aware that EMC intended to sell loans it purchased from Century to third parties, but also it was aware that EMC would be doing so in reliance on the representations and warranties that Century made in the Agreement.

20.     EMC purchased the mortgage loans and securitized or resold them in reliance on Century's representations and warranties in the MLPA, including:

- "No statement, tape, diskette, form, report or other document furnished or to be furnished by Seller pursuant to the Seller Guide, this Agreement or the related Term Sheet or in connection with the transactions contemplated hereby contains or will contain any statement that is or will be inaccurate or misleading in any material respect or omits to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading." (MLPA § 6(xiii).)

- "All terms, conditions and requirements of the Seller Guide, this Agreement and the related Term Sheet have been complied with in all material respects, including but not limited to, any Mortgage Loan which is sold to EMC." (*Id.* § 6(xv).)

- "Each Mortgage Loan was underwritten in accordance with the Underwriting Guidelines." (*Id.* § 6(xvi).)

21.     The Seller Guide also included additional loan-level representations and warranties made by Century, including:

- "The information set forth in the related Mortgage Loan Schedule is complete, true and correct." (Seller Guide § 11.02(a).)

- "The appraisal and appraiser both satisfy the requirements of Fannie Mae or Freddie Mac and Title XI of the Federal Institutions Reform, Recovery, and Enforcement Act of 1989 and the regulations promulgated thereunder, all as in effect on the date the Mortgage Loan was originated and conforms to the underwriting requirements of the Seller." (*Id.* § 11.02(w).)

- "For each Mortgage Loan, the related Mortgage File is complete and contains a true, accurate and correct copy of each of the documents and instruments specified to be included therein." (*Id.* § 11.02(kk).)

- "No fraud, error, negligence, misrepresentation or material omission of fact with respect to a Mortgage Loan has taken place on the part of the Seller or the Mortgagor or any other party involved in the origination or servicing of the Mortgage Loan." (*Id.* § 11.02(oo).)

- "Unless set forth on the Mortgage Loan Schedule, no Mortgage Loan has a Loan-to-Value Ratio in excess of 95%. Unless set forth on the Mortgage Loan Schedule, each Mortgage Loan with an LTV greater than 80.00%, is and will be subject to a Primary Mortgage Insurance Policy or Lender Primary Mortgage Insurance Policy issued by a Qualified Insurer which provides coverage in an amount set forth on the Mortgage Loan Schedule and at least equal to that which would be required by Fannie Mae and Freddie Mac if such Mortgage Loan was being delivered for sale to, and/or securitization by, Fannie Mae or Freddie Mac." (*Id.* § 11.02(rr).)

- "The Seller has no knowledge of any circumstances or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing that could reasonably be expected to cause investors to regard the Mortgage Loan as an unacceptable investment, cause such Mortgage Loan to become delinquent or adversely affect the value or the marketability of the Mortgage Loan." (*Id.* § 11.02(ss).)

- "Each Mortgage Loan was originated by or for the Seller pursuant to the Seller Guide and the Agreement, and conforms with the Underwriting Guidelines." (*Id.* § 11.02(tt).)

22.     These representations and warranties were material terms in EMC's agreement to purchase mortgage loans from Century. If any of Century's representations and warranties

-6-

turned out to be false, EMC could have exposure to the third parties to which EMC planned to sell the loans. Century agreed to indemnify EMC for that exposure.

23.　　EMC sold loans to third parties, including certain RMBS trusts and the GSEs, pursuant to pooling and servicing agreements and mortgage loan purchase agreements with those third parties ("PSAs" and, together with the mortgage loan purchase agreements, the "Third Party Agreements").

24.　　EMC sold loans to certain RMBS trusts pursuant to PSAs between EMC and the trusts listed in Exhibit B; namely: the Bear Stearns Asset Backed Securities Trust 2005-AC8 transaction ("BSABS 2005-AC8"); the Bear Stearns ALT-A Trust 2006-4 transaction ("BALTA 2006-4"); the Bear Stearns ALT-A Trust 2006-5 transaction ("BALTA 2006-5"); and the Bear Stearns Asset Backed Securities Trust 2005-AC7 transaction ("BSABS 2005-AC7") (collectively, the "Trusts").

25.　　In addition to the Trusts, EMC also sold loans to the GSEs pursuant to mortgage loan purchase agreements between EMC and the GSEs, including sales of loans originated by Century and set forth in Exhibit B.

26.　　In the Third Party Agreements, EMC made representations to the Trusts and GSEs about the Century loans being sold that were materially the same as (or in some cases narrower than) the representations Century made to EMC, including:

- "[T]he information set forth in the Mortgage Loan Schedule hereto is true and correct in all material respects." (*See, e.g.*, October 31, 2005 BSABS 2005-AC8 MLPA § 7(a); June 30, 2006 BALTA 2006-4 MLPA § 7(i); July 31, 2006 BALTA 2006-5 MLPA § 7(i); September 30, 2005 BSABS 2005-AC7 MLPA § 7(a).)

- "[T]he information set forth in Schedule A of the Prospectus Supplement with respect to the Mortgage Loans is true and correct in all material respects." (*See, e.g.*, June 30, 2006 BALTA 2006-4 MLPA § 7(xx); July 31, 2006 BALTA 2006-5 MLPA § 7(xx).)

- "[T]he Mortgage Loans are currently being serviced in accordance with accepted servicing practices." (*See, e.g.*, June 30, 2006 BALTA 2006-4 MLPA § 7(xxvi); July 31, 2006 BALTA 2006-5 MLPA § 7(xxvi).)

- "[T]he Mortgage Loan Sellers' Information (identified in Exhibit 3 hereof) does not include any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. (*See, e.g.*, October 31, 2005 BSABS 2005-AC8 MLPA § 8(g); June 30, 2006 BALTA 2006-4 MLPA § 8(vii); July 31, 2006 BALTA 2006-5 MLPA § 8(vii); September 30, 2005 BSABS 2005-AC7 MLPA § 8(g).)

- "[T]the related Mortgage File contains each of the documents and instruments listed in Section 2.01 of the Pooling and Servicing Agreement, subject to any exceptions, substitutions and qualifications as are set forth in such Section." (*See, e.g.*, June 30, 2006 BALTA 2006-4 MLPA § 7(xxv); July 31, 2006 BALTA 2006-5 MLPA § 7(xxv).)

- "[E]ach Mortgage Loan was originated in accordance with the underwriting guidelines of the related originator." (*See, e.g.*, October 31, 2005 BSABS 2005-AC8 MLPA § 7(dd); June 30, 2006 BALTA 2006-4 MLPA § 7(xxiii); July 31, 2006 BALTA 2006-5 MLPA § 7(xxiii); September 30, 2005 BSABS 2005-AC7 MLPA § 7(dd).)

27.     In other words, in reliance on Century's commitment and obligation to indemnify it for any breaches of Century's representations, EMC promised third parties that the Century loans were as Century represented them to be.

28.     Under the Third Party Agreements, in the event any party discovered a breach of the representations and warranties on any loan, which defect could not be cured and had the requisite effect on the interest of the buyer under the governing documents, EMC had an obligation to repurchase the defective loan or to compensate the Trust or GSE for its losses on that loan.

29.     EMC became aware of breaches of the representations and warranties through a variety of means.  In some cases, EMC learned of the breach as a result of a repurchase demand from the trustee of the RMBS trust or the GSE.  In other cases, the company providing mortgage insurance for the loan notified EMC of the breach in connection with its rescission or denial of insurance coverage.  In still other cases, EMC learned of the breach itself.  In each case, EMC's

discovery of the apparent breaches triggered its potential obligations and liability to the third

parties.

30.     By way of example only, EMC received demands on the following loans sold by

Century and after research and investigation determined there was a breach that required

repurchase:

- Loan ID # xxx4034 in the amount of $107,910 with a funding date of July 22, 2005: The mortgage insurance on the loan was rescinded because the mortgage insurance company, United Guaranty Residential Insurance Company, did not allow purchase of investment properties under the Stated Income/Stated Assets program.  Moreover, the borrowers' debt-to-income ratio and FICO score did not meet the guidelines for an investment transaction and the loan-to-value ratio was 90%.  This imprudent underwriting breached the MLPA, including, without limitation, sections 6(xv) and (xvi) and the Seller Guide, including, without limitation, sections 11.02(rr) and (tt).

- Loan ID # xxxx1466 in the amount of $50,400.00 with a funding date of August 19, 2005: The borrower had $233,680 in undisclosed debts, which included five additional mortgages prior to the subject transaction.  Moreover, the origination appraisal did not adequately support a value of $63,000 for the subject property.  The appraiser failed to adequately analyze and report current and prior sales, which resulted in a significantly higher appraisal than warranted.  The appraisal also failed to take into consideration or misrepresented negative factors, market value, and the physical characteristics of the subject property, improvements, or sales.  These misrepresentations breached the MLPA, including, without limitation, sections 6(xv) and (xvi) and the Seller Guide, including, without limitation, sections 11.02(w), (oo), and (tt)

- Loan ID # xxxx6489 in the amount of $66,400 with a funding date of February 6, 2006: The borrower had undisclosed debts as he obtained two additional mortgages two months before the subject transaction which resulted in $160,000 additional debt that was not disclosed.  The borrower did not disclose the additional debt or attached property on the loan application, which raised additional concerns about occupancy misrepresentation as the subject property may not be the borrower's primary residence.   These misrepresentations breached the MLPA including, without limitation, sections 6(xv) and (xvi) and the Seller Guide, including, without limitation, sections 11.02(oo) and (tt).

- Loan ID # xxxx1668 in the amount of $119,600 with a funding date of May 30, 2006: The subject loan file did not include documentation of income which was required under the guidelines.  Failure to verify breached the MLPA, including, without limitation, sections 6(xiii), (xv), and (xvi) and the Seller Guide, including, without limitation, sections 11.02(a), (oo) and (tt).

The foregoing is not an exhaustive list of the defective loans sold by Century to EMC.  Exhibit B hereto sets forth a complete list of the loans subject to this action.

31.    With respect to the mortgage loans listed in Exhibit B, EMC ultimately determined that there was a breach of one or more representations and warranties in the Third-Party Agreements requiring that EMC repurchase the mortgage loans or indemnify the Third-Party for its losses. These breaches under the Third-Party Agreements also constitute breaches of the representations and warranties made by Century to EMC. EMC therefore fulfilled its obligations under the Third Party Agreements to repurchase the loans from the Trusts and GSEs or to compensate those parties for their losses on the loans.

32.    EMC incurred losses in excess of $1,037,607 for repurchasing defective loans from third parties and compensating third parties for those loans.  EMC has also incurred additional costs and expenses in reviewing, investigating, and addressing the breaches.

33.    Century is obligated under the MLPA to indemnify EMC for the amounts it paid to repurchase and/or compensate for these defective loans and the related fees and expenses it incurred in connection with these payments and forfeitures.

34.    Between January 2013 and August 2015, EMC notified Century of Century's obligation to indemnify EMC for its payments and expenses incurred in connection with the loans identified in Exhibit B.  However, Century has refused to acknowledge its obligation to indemnify EMC – and has not, in fact, compensated it – for its losses on these loans.

35.    EMC at all times performed all of its obligations to Century, if any, under the Agreement, and all conditions precedent to the relief sought in this action, if any, have been satisfied.

## FIRST CAUSE OF ACTION
### (Indemnification for Losses Incurred under the Agreement Against Century)

36.     Plaintiff EMC realleges and incorporates by reference paragraphs 1 through 35 as if fully set forth herein.

37.     The Agreement is a valid and binding agreement between EMC and Century.

38.     EMC has performed all of its obligations under the Agreement.

39.     In Section 11.03.02 of the Seller Guide, Century expressly agreed to indemnify EMC for "any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses . . . resulting from a breach or alleged breach of any of the representations and warranties contained in this Chapter 11."

40.     EMC has incurred substantial damages to repurchase and/or compensate for loans that breached Century's representations and warranties under the Agreement.

41.     EMC has provided Century with notice of EMC's right to indemnification for these amounts, and Century has refused to acknowledge its obligation to indemnify EMC for any expenses, losses, claims or damages.

42.     As a result of Century's breach of its indemnification obligations under the Agreement, EMC has been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands the following relief:

A.     Judgment in favor of EMC against Century;

B.     An award of damages according to proof;

C.     Prejudgment interest, costs and attorney fees to the extent allowable by law or contract;

D.     Trial by jury for all issues so triable as a matter of right; and

-11-

E.      Such other and further relief as the Court may determine to be just and proper.


Dated:
        June 27, 2016

                                        Respectfully submitted,

                                        TACHAU MEEK PLC
                                        Dustin E. Meek
                                        Adam K. Neel


                                        s/Dustin E. Meek
                                        3600 National City Tower
                                        101 South Fifth Street
                                        Louisville, Kentucky 40202-3120
                                        Phone: (502) 238-9900
                                        Telecopy: (502) 238-9910
                                        dmeek@tachaulaw.com
                                        aneel@tachaulaw.com

                                        **Counsel to be added upon LR 83.02 motion:**

                                        **KAYE SCHOLER LLP**
                                        Eric N. Whitney (eric.whitney@kayescholer.com)
                                        Jeffrey A. Fuisz (jeffrey.fuisz@kayescholer.com)
                                        Aaron F. Miner (aaron.miner@kayescholer.com)
                                        Stephanna F. Szotkowski
                                        (stephanna.szotkowski@kayescholer.com)
                                        250 West 55th Street
                                        New York, NY 10019-9710
                                        (212) 836-8000

                                        *Attorneys for Plaintiff EMC Mortgage LLC*