**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| EMC MORTGAGE LLC (formerly known as EMC MORTGAGE CORPORATION) <br><br>      Plaintiff, <br><br>    v. <br><br> CENTURY MORTGAGE COMPANY, <br><br>      Defendant. | **ELECTRONICALLY FILED** <br><br> No: 3:16-cv-00416-GNS |

**EMC MORTGAGE LLC'S MEMORANDUM OF LAW IN OPPOSITION
TO CENTURY MORTGAGE COMPANY'S MOTION TO DISMISS**

**KAYE SCHOLER LLP**

250 West 55th Street
New York, New York 10019
Telephone: (212) 836-8000
Facsimile:  (212) 836-8689

**TACHAU MEEK PLC**

3600 National City Tower
101 South Fifth Street
Louisville, Kentucky 40202-3120
Telephone: (502) 238-9900
Telecopy: (502) 238-9910

*Attorneys for EMC Mortgage, LLC*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ........................................................................................3

ARGUMENT .........................................................................................................7

      POINT I  THIS MOTION IS AN "INAPPROPRIATE VEHICLE"  FOR
      CENTURY'S STATUTE OF LIMITATIONS DEFENSE................................................7

      POINT II  THE EVIDENCE WILL PROVE THAT  EMC'S CLAIMS
      ACCRUED OUTSIDE OF TEXAS ....................................................................8

      POINT III  EMC'S INDEMNIFICATION CLAIMS ACCRUED WHEN IT
      INCURRED LOSSES TO THIRD-PARTY PURCHASERS .........................................11

      POINT IV  EMC'S INDEMNIFICATION CLAIMS ARE DISTINCT FROM
      BREACHES OF THE UNDERLYING REPRESENTATIONS AND
      WARRANTIES ....................................................................................14

CONCLUSION....................................................................................................21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACE Securities Corp. v. DB Structured Prods., Inc.*,
  25 N.Y.3d 581 (N.Y. 2015) ..................................................................................18

*Ashford v. Bollman Hat Co.*,
  No. CV 5: 15-264-DCR, 2016 WL 128151 (E.D. Ky. Jan. 11, 2016)....................11

*Cataldo v. U.S. Steel Corp.*,
  676 F.3d 542 (6th Cir. 2012) ..............................................................................7, 8

*Cent. Trust Co. v. Louisville Trust Co.*,
  100 F. 545 (6th Cir. 1900) ...................................................................................13

*Combs v. Int'l Ins. Co.*,
  163 F. Supp. 2d 686 (E.D. Ky. 2001), *aff'd*, 354 F.3d 568 (6th Cir. 2004).............9, 10, 11, 13

*Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc.*,
  810 F.3d 861 (2d Cir. 2015)...........................................................................18, 19

*Directv, Inc. v. Treesh*,
  487 F.3d 471 (6th Cir. 2007) ...............................................................................7

*Eddins v. Cenlar FSB*,
  964 F. Supp. 2d 843 (W.D. Ky. 2013)...................................................................8

*Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*,
  428 F.3d 223 (6th Cir. 2005) ...............................................................................7

*Fisher v. Preston*,
  251 A.D.2d 843 (N.Y. App. Div. 3d Dep't 1998) ................................................12

*Hines v. Hiland*,
  No. 5:09–CV–00075–R, 2011 WL 1131521 (W.D. Ky. Mar. 25, 2011) .................7

*Hooper Assocs., Ltd. v. AGS Computers, Inc.*,
  74 N.Y.2d 487 (N.Y. 1989) ................................................................................16

*In re Lehman Bros. Holdings Inc.*,
  530 B.R. 601 (Bankr. S.D.N.Y. 2015).........................................................3, 15, 16

*In re MF Global, Inc.*,
  496 B.R. 315 (S.D.N.Y. 2013)..............................................................................14

Page(s)

*In re Tomlin*,
No. 15-20852, 2016 WL 3574059 (Bankr. E.D. Ky. June 23, 2016) .................................8, 10

*LaPoint v. AmerisourceBergen Corp.*,
970 A.2d 185 (Del. 2009) .....................................................................................................17

*Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*,
No. 13-CV-00090-PAB-MJW, 2014 WL 5069409 (D. Colo. Oct. 9, 2014).................... 15-16

*Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*,
No. 13-CV-00090-PAB-MJW, 2014 WL 3258409 (D. Colo. July 8, 2014)..........................16

*Lehman Brothers Holdings v. Universal Am. Mortg. Co., LLC*,
No. 14-1180, 2016 WL 325126 (10th Cir. Jan. 27, 2016)...........................................19, 20, 21

*Mars Assocs., Inc. v. New York City Educ. Constr. Fund*,
126 A.D.2d 178 (N.Y. App. Div. 1st Dep't 1987)............................................................. 12-13

*McDermott v. City of New York*,
50 N.Y.2d 211 (N.Y. 1980) ...................................................................................................11

*Michalak v. LVNV Funding, LLC*,
604 Fed. App'x 492 (6th Cir. 2015) .........................................................................................7

*Moscato v. City of New York (Parks Dep't)*,
183 A.D.2d 599 (N.Y. App. Div. 1st Dep't 1992)...................................................................12

*Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*,
782 F.2d 346 (2d Cir. 1986)............................................................................................20, 21

*Plantronics, Inc. v. United States*,
No. 88 CIV. 1892, 1990 WL 67440 (S.D.N.Y. May 16, 1990)..............................................12

*Powell v. Jacor Commc'ns Corp.*,
320 F.3d 599 (6th Cir. 2003) ...................................................................................................7

*Residential Funding Co., LLC v. Acad. Mortg. Corp.*,
59 F. Supp. 3d 935 (D. Minn. 2014)............................................................................. 3, 16-17

*Residential Funding Co., LLC v. Americash*,
No. CIV. 13-3460 DSD/JJG, 2014 WL 3577312 (D. Minn. July 21, 2014) .....................3, 17

*Residential Funding Co., LLC v. Broadview Mortg. Corp.*,
No. CIV. 13-3463 ADM/SER, 2014 WL 4104819 (D. Minn. Aug. 19, 2014) .................3, 17

iii

Page(s)

*Residential Funding Co., LLC v. Cmty. W. Bank, N.A.*,
   No. CIV. 13-3468 JRT/JJK, 2014 WL 5207485 (D. Minn. Oct. 14, 2014) ...........................17

*Residential Funding Co., LLC v. Embrace Home Loans, Inc.*,
   27 F. Supp. 3d 980 (D. Minn. 2014)...................................................................................17

*Residential Funding Co., LLC v. Gateway Bank, F.S.B.*,
   No. CIV. 13-3518 MJD/JSM, 2014 WL 3952321 (D. Minn. Aug. 13, 2014)....................3, 17

*Residential Funding Co., LLC v. Mortg. Access Corp.*,
   No. CIV. 13-3499 DSD/FLN, 2014 WL 3577403 (D. Minn. July 21, 2014)....................3, 17

*Residential Funding Co., LLC v. Mortg. Outlet, Inc.*,
   No. 13-CV-3447 PJS/JSM, 2014 WL 4954645 (D. Minn. Oct. 1, 2014)...............................17

*Residential Funding Co., LLC v. Wallick & Volk, Inc.*,
   No. CIV. 13-3512 MJD/JJG, 2014 WL 3955257 (D. Minn. Aug. 13, 2014) ....................3, 17

*Studley v. Sheber*,
   166 A.D.2d 319 (N.Y. App. Div. 1st Dep't 1990)...................................................................12

*Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*,
   762 F.3d 165 (2d Cir. 2014)...................................................................................................11

*SunTrust Mortg., Inc. v. Am. Pac. Home Funding, LLC*,
   No. 3:12CV477-JRS, 2012 WL 6561728 (E.D. Va. Dec. 14, 2012).......................................17

*Tedesco v. A.P. Green Indus., Inc.*,
   8 N.Y.3d 243 (N.Y. 2007) ............................................................................................. 11-12

*Terranova v. Terranova*,
   883 F. Supp. 1273 (W.D. Wis. 1995) ................................................................................ 9-10

*Travelers Indem. Co. v. LLJV Dev. Corp.*,
   227 A.D.2d 151 (N.Y. App. Div. 1st Dep't 1996)...................................................................12

*Varo, Inc. v. Alvis PLC*,
   261 A.D.2d 262 (N.Y. App. Div. 1st Dep't 1999)...................................................................12

*Willits v. Peabody Coal Co.*,
   Nos. 98-5458, 98-5527, 1999 WL 701916 (6th Cir. Sept. 1, 1999) ..............................9, 10, 11

*Wilson v. Webb*,
   869 F. Supp. 496 (W.D. Ky. 1994).........................................................................................7

**Statutes**

Ky. Rev. Stat. § 413.320 .................................................................................................8

Plaintiff EMC Mortgage LLC ("EMC"), formerly known as EMC Mortgage Corporation, submits this memorandum of law in opposition to defendant Century Mortgage Company's ("Century") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Century's motion to dismiss is premised entirely on the misconception that EMC is bringing a repurchase claim against Century. It is not. Rather, EMC is suing to enforce its legally separate and distinct right to be indemnified against liabilities it incurred to third-parties as a result of Century's sale to it of defective loans. It is black-letter law that an indemnification claim does not arise until the liability to a third-party is fixed or a payment is made. In fact, Century does not even argue that an indemnification claim would be time-barred here, but rather spends its entire brief attempting to recast the indemnification claims as repurchase claims.

EMC's Complaint pleads timely contractual indemnification claims against Century based on losses EMC incurred when it repurchased or compensated third-parties for eleven defective mortgage loans that it had sold to them. EMC bought those loans from Century in 2005 and 2006 and resold them to third-parties ("Third-Party Purchasers") in reliance on Century's loan-level representations and warranties, which EMC in turn made to these purchasers. When certain of those representations and warranties were later discovered to be untrue, EMC was contractually obligated to repurchase those loans from the Third-Party Purchasers or to reimburse them for their losses where the loans already had been liquidated. EMC now seeks to enforce its contractual indemnification rights against Century to recover those payments.

Century made two legally distinct sets of contractual promises to EMC in two separate sections of the February 1, 2005, Mortgage Loan Purchase Agreement ("MLPA") and the incorporated EMC Seller Guide ("Seller Guide") pursuant to which Century sold the loans to

EMC.  Century represented and warranted, among other things, that there were no errors, mistakes, misrepresentations, or omissions concerning the origination of the loans and that the loans complied with applicable underwriting guidelines.  First, under Seller Guide Section 11.03.01 ("Repurchase"), if those loan-level representations and warranties were breached, Century agreed to cure the breaches or, failing that, to repurchase the loans.  Second, under Seller Guide Section 11.03.02 ("Indemnity"), Century agreed to "indemnify EMC and hold it harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses" resulting from a breach of the representations and warranties.  Section 11.03.02 is triggered when EMC suffers a loss or forfeiture to a third-party.  This lawsuit seeks to enforce the second of these promises.

Century's motion ignores the legal distinction between these contractual rights.  Thus, Century argues that EMC's claims accrued when Century delivered the defective loans to EMC in 2005 and 2006, not when EMC was later required to repurchase them from the Third-Party Purchasers.  However, under well-established New York law, which the parties selected to govern the MLPA and Seller Guide, breach of contract and contractual indemnification are separate causes of action, the latter of which does not accrue until the liability to a third-party is fixed or a payment is made.

Although Century concedes that New York substantive law applies to EMC's claims, it fails to cite a single one of the multiple decisions addressing contractual indemnification claims under New York law, presumably because none of them supports its position.  Rather, Century cites inapposite decisions from the Tenth Circuit and elsewhere that do not involve contractual indemnification claims.  Worse still, Century fails to disclose that its counsel has made this identical argument (citing many of the same legal authorities) in more than a half dozen actions

against other mortgage originators, and courts have rejected that argument each and every time. *See In re Lehman Bros. Holdings Inc.*, 530 B.R. 601, 610-13 (Bankr. S.D.N.Y. 2015); *Residential Funding Co., LLC v. Acad. Mortg. Corp.*, 59 F. Supp. 3d 935, 953 (D. Minn. 2014); *Residential Funding Co., LLC v. Broadview Mortg. Corp.*, Nos. CIV. 13-3463 ADM/SER, 2014 WL 4104819, at *7-*8 (D. Minn. Aug. 19, 2014); *Residential Funding Co., LLC v. Gateway Bank, F.S.B.*, No. CIV. 13-3518 MJD/JSM, 2014 WL 3952321, at *16-*17 (D. Minn. Aug. 13, 2014); *Residential Funding Co., LLC v. Wallick & Volk, Inc.*, No. CIV. 13-3512 MJD/JJG, 2014 WL 3955257, at *5 (D. Minn. Aug. 13, 2014); *Residential Funding Co., LLC v. Americash*, No. CIV. 13-3460 DSD/JJG, 2014 WL 3577312, at *6 (D. Minn. July 21, 2014); *Residential Funding Co., LLC v. Mortg. Access Corp.*, No. CIV. 13-3499 DSD/FLN, 2014 WL 3577403, at *6 (D. Minn. July 21, 2014). Century has not offered any conflicting Sixth Circuit or Kentucky law or any other justification for why the Court should depart from this well-reasoned line of authority from multiple jurisdictions.

Because EMC's indemnification claim on each loan did not accrue until it incurred losses on the loans to the Third-Party Purchasers and Century cannot establish on the pleadings that those losses occurred outside of any applicable limitations period, the Court should deny Century's motion.[1]

## STATEMENT OF FACTS

EMC brought this action because of Century's refusal to honor its contractual obligations to indemnify EMC for at least one million dollars in losses resulting from defective mortgage loans that Century sold to EMC. (Compl. ¶ 1.) Century sold the mortgage loans at issue to EMC

---

[1] As demonstrated in Point II, below, EMC will prove at the conclusion of discovery that its indemnification claims are timely and that they accrued outside of Texas for purposes of applying Kentucky's borrowing statute. However, there is no record on this motion from which the Court can currently determine where those claims accrued.

pursuant to the MLPA and incorporated Seller Guide, in which Century made numerous representations and warranties concerning the characteristics of the loans and the manner in which they were originated.  (Compl. ¶¶ 2, 3, 14; Exs. A-1 & A-2.)

As the correspondent lender, Century was solely responsible for locating and collecting information and documentation from the borrowers, verifying the accuracy of that information, underwriting and documenting the loans according to the agreed-upon guidelines, and funding the loans.  (*Id.* ¶ 15.)  Century also was the servicer of the loans until it sold them to EMC.  (*Id.*)  Century's loan-level representations and warranties assured EMC – a stranger to the origination of the loans – that the loans has been properly originated and documented and were as Century described them.  (*Id.* ¶¶ 3, 20, 21.)  In the event of discovery of a breach of one or more of the loan-level representations and warranties, Century was required to cure the breach or, failing that, to repurchase the loan from EMC.  (Ex. A-2 § 11.03.01.)

In addition to its cure and repurchase obligation, Century promised to indemnify EMC against all claims, losses, forfeitures, fees, and expenses based on or arising from any actual or alleged breaches of Century's representations and warranties.  (Compl. ¶ 3.)  Specifically, Section 11.03.02 of the Seller Guide provided:

> In addition to such cure and repurchase obligation, the Seller shall indemnify EMC and hold it harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from any assertion based on, grounded upon or resulting from a breach or alleged breach of any of the representations and warranties contained in this Chapter 11.

(*Id.* ¶ 16; Ex. A-2 § 11.03.02.)  In reliance on Century's representations and warranties, its repurchase commitment, and its indemnification obligation, EMC purchased the mortgage loans from Century.  (Compl. ¶ 17.)

EMC purchased the loans from Century for two primary purposes: (i) securitization into various residential mortgage-backed securities ("RMBS") transactions or (ii) whole loan sales to the Federal National Mortgage Association ("Fannie Mae") or the Federal Home Loan Mortgage Corporation ("Freddie Mac" and, together with Fannie Mae, the "GSEs"). (*Id.* ¶ 4.) Century knew that when it sold loans to EMC, EMC intended to securitize some or all of the loans or to sell them to third-parties, including RMBS trusts and GSEs. (*Id.* ¶ 18.) In fact, Century explicitly acknowledged this in the Seller Guide:

> The Seller acknowledges that with respect to some or all of the Mortgage Loans, EMC intends to effect one or more Whole Loan Transfers and/or one or more Pass-Through Transfers. With respect to each Whole Loan Transfer or Pass Through Transfer, as the case may be, entered into by EMC, the Seller agrees . . . to restate, for the benefit of the owners of the Mortgage Loans, the representations and warranties contained in Chapter 11 of the Seller Guide.

(*Id.*; Ex. A-2 § 13.05.)

Century also knew that EMC would rely on Century's representations and warranties in making substantially identical representations and warranties to third-parties and agreeing to cure or repurchase breaching loans. (Compl. ¶¶ 19-21.) If any of those representations and warranties turned out to be false, EMC would have exposure to the third-party buyers of the loans. (*Id.* ¶ 22.) Century specifically agreed to indemnify EMC against that exposure. (*Id.*)

In reliance on Century's representations and warranties, EMC sold the loans to third-parties, including certain RMBS trusts (the "Trusts") and the GSEs pursuant to pooling and servicing agreements and/or mortgage loan purchase agreements (the "Third-Party Agreements") with those third-parties. (*Id.* ¶¶ 4, 23-25; Ex. B.) In the Third-Party Agreements, EMC made representations and warranties to the Trusts and the GSEs about the Century loans that were

materially identical to the representations and warranties that Century made to EMC about the same loans. (Compl. ¶¶ 26-27.)

Under the Third-Party Agreements, in the event that any party discovered a breach of representations and warranties on any loan, which defect could not be cured, EMC was obligated to repurchase the defective loan or to compensate the Trust or the GSE for its losses on that loan. (*Id.* ¶¶ 5, 28.) Subsequent to the third-party sales, EMC became aware of alleged breaches of the loan-level representations and warranties, which triggered its potential obligations and liability to the Third-Party Purchasers. (*Id.* ¶¶ 29-30.) With respect to the subject mortgage loans, EMC ultimately determined that there was a breach of one or more representations and warranties in the Third-Party Agreements requiring EMC to repurchase the mortgage loans or compensate the third-party for its losses. (*Id.* ¶ 31.)

These breaches under the Third-Party Agreements also constituted breaches of the representations and warranties made by Century to EMC. (*Id.* ¶¶ 6, 31.) EMC incurred losses in excess of $1,037,607 fulfilling its obligations arising from breaches of the Third-Party Agreements. (*Id.* ¶¶ 6-7, 31-32.) Century is obligated under the MLPA and Seller Guide to indemnify EMC for the amounts it paid to repurchase or compensate the third-parties for these defective loans, as well as any related fees and expenses it incurred. (*Id.* ¶ 33.)

Between January 2013 and August 2015, EMC notified Century of Century's obligation to indemnify EMC for its payments and expenses incurred in connection with the subject loans. (*Id.* ¶ 34; Ex. B.) Century has refused to acknowledge its obligation to indemnify EMC and has not compensated EMC for its losses on those loans. (Compl. ¶¶ 8, 34.) As a result, on June 27, 2016, EMC brought this action against Century for indemnification based on the third-party losses EMC suffered as a result of Century's breaches. (*Id.* ¶¶ 36-42.)

## ARGUMENT

### POINT I

### THIS MOTION IS AN "INAPPROPRIATE VEHICLE" FOR CENTURY'S STATUTE OF LIMITATIONS DEFENSE

A statute of limitations is an affirmative defense for which the defendant bears the burden of proof under Kentucky law and Rule 8(c)(1) of the Federal Rules of Civil Procedure. *Hines v. Hiland*, No. 5:09–CV–00075–R, 2011 WL 1131521, at *2 (W.D. Ky. Mar. 25, 2011); Fed. R. Civ. P. 8(c)(1). A plaintiff is not required to negate the statute of limitations or other affirmative defenses in its complaint. *See Michalak v. LVNV Funding, LLC*, 604 Fed. App'x 492, 493-94 (6th Cir. 2015). The Sixth Circuit has, therefore, recognized that, "[g]enerally, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is an 'inappropriate vehicle' for dismissing a claim based upon a statute of limitations." *Id.* at 493; *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Dismissal is warranted only if "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo*, 676 F.3d at 547.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the allegations in the Complaint in the light most favorable to EMC, accept its allegations as true, and draw all reasonable inferences in its favor. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 228 (6th Cir. 2005); *Wilson v. Webb*, 869 F. Supp. 496, 496 (W.D. Ky. 1994). Where, as here, factual issues exist related to the timeliness of the claims – namely, when EMC incurred losses to the Third-Party Purchasers in connection with each mortgage loan – a statute of limitations defense cannot be resolved on a motion to dismiss. *See, e.g.*, *Michalak*, 604 Fed. App'x at 493 (reversing dismissal because the allegations in the complaint did not affirmatively show that the claim was time-barred); *Powell v. Jacor Commc'ns Corp.*, 320 F.3d 599, 604 (6th Cir. 2003)

(reversing dismissal because issues of fact concerning tolling of statute of limitations could not be resolved on motion to dismiss); *Eddins v. Cenlar FSB*, 964 F. Supp. 2d 843, 850 (W.D. Ky. 2013) (denying motion to dismiss because issues of fact prevented resolution of statute of limitations defense).

As established below, EMC's indemnification claims accrued, at the earliest, when EMC incurred losses by repurchasing or compensating Third-Party Purchasers for the defective mortgage loans. EMC will prove that its repurchase and make-whole payments to the Third-Party Purchasers for each of the eleven loans identified in the Complaint occurred within the applicable statute of limitations. However, that is an issue of fact not addressed in the pleadings. Therefore, Century cannot carry its burden to prove that EMC's claims are untimely at this stage of the proceedings.

## POINT II

### THE EVIDENCE WILL PROVE THAT
### EMC'S CLAIMS ACCRUED OUTSIDE OF TEXAS

Century argues that EMC's claims accrued in Texas and are, therefore, time-barred under Texas' four-year period of limitations, made applicable pursuant to Kentucky's borrowing statute, Ky. Rev. Stat. § 413.320. (Opening Br. at 6-12.) At the conclusion of fact discovery, EMC will prove that its indemnification claims did not accrue in Texas, but rather in Kentucky or elsewhere, and that its claims may be subject to a fifteen-year limitations period. However, since EMC is not required to plead facts preemptively to rebut an affirmative defense – and many of those facts are uniquely within Century's possession – *e.g*., where Century determined not to fulfill its contractual obligation to indemnify EMC – there is currently no record from which the Court can determine where EMC's claims accrued. *See In re Tomlin*, No. 15-20852, 2016 WL 3574059, at *2-*4 (Bankr. E.D. Ky. June 23, 2016); *Cataldo*, 676 F.3d at 547.

The Sixth Circuit has recognized that *where* a cause of action accrues, for purposes of applying Kentucky's borrowing statute, is a "highly uncertain area of state law, forcing us to make an educated '*Erie* Guess.'" *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004). There are no Kentucky cases addressing where a contractual indemnification claim accrues. The Sixth Circuit, in an attempt to anticipate Kentucky law, has looked to where the "final act which transforms the liability into a cause of action" occurred. *Willits v. Peabody Coal Co.*, Nos. 98-5458, 98-5527, 1999 WL 701916, at \*12 (6th Cir. Sept. 1, 1999) (internal quotations omitted). Although the place where the final act occurred may differ from case to case, the Sixth Circuit has stated that analyzing where the plaintiff sustained the injury is "not particularly helpful" in making that determination. *Combs*, 354 F.3d at 582. Thus, the focus is not on where the plaintiff felt the injury, but rather where the defendant undertook the final act in furtherance of its breach. *See id.* at 582, 596.

In *Combs*, for example, the administrator of a decedent's estate sued an insurance carrier for failure to compensate the decedent for litigation expenses he had incurred, which allegedly constituted a breach of the insurance policy. The United States District Court for the Eastern District of Kentucky held, and the Sixth Circuit affirmed, that the plaintiff's cause of action accrued where the defendant insurer made the determination to decline insurance coverage and where it mailed a letter communicating that decision to the decedent. *See Combs v. Int'l Ins. Co.*, 163 F. Supp. 2d 686, 691-94 (E.D. Ky. 2001), *aff'd*, 354 F.3d 568 (6th Cir. 2004). Notably, the district court in *Combs* relied on *Terranova v. Terranova*, 883 F. Supp. 1273, 1280-81 (W.D. Wis. 1995), which likewise held that the "final significant event giving rise to the cause of action" for breach of an indemnification agreement occurred where "defendants rejected plaintiffs' demands for indemnification." *Id.* at 1281 ("No particular place for performance

having been specifically designated in the separation agreement, that breach occurred in Wisconsin and was caused by Wisconsin residents. Consequently, plaintiffs' claims for indemnification are not 'foreign cause[s] of action' under § 893.07 and therefore are subject to Wisconsin's and not California's statutes of limitation.").[2]

Here, the facts relevant to the place of accrual point to Kentucky, Century's principal place of business and state of incorporation (Compl. ¶ 10). That is the place where Century is likely to have made the decision to refuse EMC's indemnification demands. However, those facts are not "definitively ascertainable" from the allegations in the Complaint. *See In re Tomlin*, 2016 WL 3574059, at *2-*4. Century has admitted that EMC could have sued Century in a number of different jurisdictions, including New York, Texas, Delaware, and Kentucky. (Opening Br. at 8.) Indeed, this action involves: (1) a Texas plaintiff organized under Delaware law with New York-based parent companies; (2) an agreement expressly governed by New York substantive law; (3) Third-Party Purchasers based in unnamed locations; (4) mortgage loans backed by collateral located in unnamed jurisdictions; and, (5) a defendant located and organized in Kentucky, and which is likely to have refused to indemnify EMC in Kentucky.[3]

---

[2] *Willits*, which Century cites in support of its position that EMC's claims accrued in Texas (*see* Opening Br. at 9-11), actually undermines its argument. *Willits*, like *Combs*, stands for the proposition that in a case involving a contract for payment of money allegedly due, the cause of action accrues where the defendant decided to deny the payment, not where the plaintiff received or expected to receive the payment. 1999 WL 701916, at *13. Accordingly, even if Century's initial delivery of the defective loans to EMC were relevant to when or where EMC's third-party indemnification claims accrued – it is not, as established below – *Willits* suggests that the locus of accrual is the place from which Century sent the loans, not the place where EMC received them.

[3] That fact alone underscores the absurdity of Century's unwarranted suggestion that EMC has engaged in forum-shopping. (*Id.*) EMC has properly filed an action in Kentucky federal court against a breaching party that is incorporated and has its principal place of business in Kentucky.

Because the existing facts do not establish where EMC's indemnification claims accrued, the Court should decline to apply Kentucky's borrowing statute at this stage of the proceedings.[4]

## POINT III

### EMC'S INDEMNIFICATION CLAIMS ACCRUED WHEN IT INCURRED LOSSES TO THIRD-PARTY PURCHASERS

The Complaint states timely contractual indemnification claims against Century because those claims accrued when EMC made repurchase or make-whole payments to the Third-Party Purchasers.

Although Kentucky's statute of limitations applies to EMC's indemnification claims as a matter of procedure under Kentucky choice-of-law rules, New York's law on indemnification applies to the substance of those claims under the MLPA's contractual choice-of-law provision. *See Ashford v. Bollman Hat Co.*, No. CV 5: 15-264-DCR, 2016 WL 128151, at *4 (E.D. Ky. Jan. 11, 2016).[5] New York law unequivocally states that a claim for indemnification for payments to a third-party does not accrue until the indemnified party becomes bound to make or actually makes that payment. "[S]ince the cause of action [for indemnification] is not complete until loss is suffered, familiar Statute of Limitations principles dictate that accrual occurs upon payment by the party seeking indemnity." *See McDermott v. City of New York*, 50 N.Y.2d 211, 217 (N.Y. 1980); *see also Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 188 (2d Cir. 2014) (applying New York law, holding that "a claim for contractual indemnification only accrues once the indemnitee has suffered a loss, *i.e.*, made a payment"); *Tedesco v. A.P. Green Indus., Inc.*, 8 N.Y.3d 243, 247 (N.Y. 2007) ("The statute of limitations on a claim for indemnity

---

[4]     Both *Combs* and *Willits* were decided at the summary judgment stage. Century fails to cite any relevant decisions that determined where similar claims accrued for purposes of applying Kentucky's borrowing statute on a motion to dismiss.

[5]     Century agrees that New York substantive law applies to EMC's indemnification claim. (*See* Opening Br. at 6; Ex. A-1 § 13.)

or contribution accrues only when the person seeking indemnity or contribution has paid the underlying claim."); *Varo, Inc. v. Alvis PLC*, 261 A.D.2d 262, 264-65 (N.Y. App. Div. 1st Dep't 1999) (reversing because motion court failed to distinguish between breach of warranty and indemnification claims and holding that the cause of action for indemnification had not yet accrued); *Fisher v. Preston*, 251 A.D.2d 843, 844 (N.Y. App. Div. 3d Dep't 1998) (dismissal on limitations grounds does not warrant dismissal of related "claims seeking indemnification and/or contribution since those claims do not accrue, for Statute of Limitations purposes, until payment is made on the underlying claim"); *Moscato v. City of New York (Parks Dep't)*, 183 A.D.2d 599, 601 (N.Y. App. Div. 1st Dep't 1992) ("[T]he alleged cross claim for contractual indemnification . . . would not accrue until payment had been made"); *Travelers Indem. Co. v. LLJV Dev. Corp.*, 227 A.D.2d 151, 154 (N.Y. App. Div. 1st Dep't 1996) ("[I]t is well settled that a cause of action based upon a contract of indemnification does not arise until liability is incurred by way of actual payment").

Indeed, New York courts routinely dismiss indemnification claims as premature if they are asserted before the liability to a third-party is established. *See, e.g., Plantronics, Inc. v. United States*, No. 88 CIV. 1892, 1990 WL 67440, at *1 (S.D.N.Y. May 16, 1990) (concluding that action for indemnification was properly dismissed as premature where liability had not been determined); *Studley v. Sheber*, 166 A.D.2d 319, 320 (N.Y. App. Div. 1st Dep't 1990) (affirming that motion court properly limited relief to indemnification claim that had already accrued); *Mars Assocs., Inc. v. New York City Educ. Constr. Fund*, 126 A.D.2d 178, 191 (N.Y. App. Div.

1st Dep't 1987) (dismissing indemnification claim as "premature until [plaintiff] makes [indemnification] payments").[6]

In addition to any cure or repurchase obligation, Section 11.03.02 of the Seller Guide required Century to indemnify EMC for "any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments and other costs and expenses . . . resulting from a breach or alleged breach of any of the representations and warranties contained in this Chapter 11." (Compl. ¶ 16; Ex. A-2.) After EMC purchased the mortgage loans from Century and resold them to third-parties, "EMC ultimately determined that there was a breach of one or more representations and warranties in the Third-Party Agreements requiring that EMC repurchase the mortgage loans or indemnify the Third-Party for its losses." (Compl. ¶ 31.) EMC, therefore, "fulfilled its obligations under the Third-Party Agreements to repurchase the loans from the Trusts and GSEs or to compensate those parties for their losses on the loans." (*Id.*) Those payments triggered EMC's right to pursue claims for indemnification against Century under New York law – not earlier, when Century first delivered the defective loans to EMC in 2005 and 2006. Based on those factual allegations, which must be accepted as true at the pleading stage, Century cannot demonstrate a basis for dismissal on statute of limitations grounds.

---

[6]     The Sixth Circuit has likewise recognized that an indemnification claim accrues when the indemnitee suffers a loss. *See*, *e.g.*, *Cent. Trust Co. v. Louisville Trust Co.*, 100 F. 545, 547 (6th Cir. 1900) (concluding that "an action will lie for breach of a covenant to pay before actual payment by the plaintiff, but not upon a mere covenant of indemnity until the plaintiff has actually sustained loss or damage"); *Combs*, 354 F.3d at 597 (under an indemnity insurance policy, a cause of action does not accrue "until the liability has been discharged, as by payment of the judgment by the insured").

## POINT IV

### EMC'S INDEMNIFICATION CLAIMS ARE DISTINCT FROM
### BREACHES OF THE UNDERLYING REPRESENTATIONS AND WARRANTIES

Unable to address the foregoing decisions governing the accrual of EMC's indemnification claims, Century does not even acknowledge them. Instead, it simply recasts EMC's indemnification claims as breach of contract claims based on Century's alleged breaches of the representations and warranties in the MLPA and Seller Guide. (Opening Br. at 22.) However, the mere fact that Century's breaches caused EMC to suffer losses to the Third-Party Purchasers does not preclude EMC from asserting indemnification claims, which are independent causes of action under New York law and derive from a separate section of the Seller Guide.

Seller Guide Section 11.03.01, entitled "Repurchase," provides that upon discovery of a breach of the loan-level representations and warranties, if Century is unable to cure the breach, it must repurchase the affected loans. (Ex. A-2.) Seller Guide Section 11.03.02, entitled "Indemnity," provides that "[i]n addition to such cure and repurchase obligation," Century must indemnify EMC against any losses resulting from a breach of any of the representations and warranties. (*Id*.) Accordingly, the plain language of the Seller Guide demonstrates that the parties intended EMC's indemnification right to be "in addition to" – and, therefore, separate from – any repurchase right. Century's argument that EMC's indemnification claim is indistinct from a repurchase claim not only ignores this key phrase, but it would also make an entire section of the contract – 11.03.02 – superfluous, which is contrary to well-established principles of contract interpretation under New York law. *See*, *e.g.*, *In re MF Global, Inc*., 496 B.R. 315, 319 (S.D.N.Y. 2013) (courts should not read a contract in such a way "that would render any individual provision superfluous").

The court in *Lehman Brothers Holdings Inc. v. Hometrust Mortgage Company (In re Lehman Brothers Holdings Inc.)*, 530 B.R. 601 (Bankr. S.D.N.Y. May 7, 2015), *aff'd, Hometrust Mortgage Co. v. Lehman Brothers Holdings*, No. 15CV4060, 2015 WL 5674899 (S.D.N.Y. Sept. 25, 2015), addressed precisely this issue under similar circumstances. In that case, Hometrust Mortgage Company, a mortgage loan originator like Century, sold loans to Lehman Brothers that allegedly breached certain representations and warranties in the applicable mortgage loan purchase agreement. Lehman resold the loans to Fannie Mae, which later discovered the alleged breaches and filed a claim against Lehman for losses Fannie Mae suffered on the loans. Having settled Fannie Mae's claim, Lehman sought a declaratory judgment that the settlement triggered Lehman's right to assert a contractual indemnification claim against Hometrust. Hometrust – represented by none other than American Mortgage Law Group, Century's lawyers here – argued that Lehman's indemnification claim was time-barred because it was actually a breach of contract claim based on Hometrust's alleged breaches of the loan representations and warranties, which accrued when Hometrust delivered the loans to Lehman in 2006 and 2007. *Id.* at 604.

The court rejected Hometrust's argument and denied its motion to dismiss, concluding that the applicable indemnification provision, which, as here, was "[i]n addition to any repurchase and cure obligations of Seller," *id.* at 607, gave rise to an independent cause of action. It recognized that:

> [T]he statute of limitations on a loan re-seller's right to indemnification from a loan originator is part of a package of bargained-for rights and should be available when the re-seller makes a payment to a third party. Otherwise, the detailed and extensive documents that comprise the Agreement and countless others like it are replete with indemnification rights that are, at best, fleeting, and at worst, illusory.

*Id.* at 609-10; *see also Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co., LLC*, No. 13-CV-00090-PAB-MJW, 2014 WL 5069409, at *1-*3 (D. Colo. Oct. 9, 2014) (rejecting

defendant-originator's argument that indemnification is merely a remedial provision, not an independent cause of action, and holding that plaintiff's indemnification claim did not accrue until it made a payment to a third-party GSE).[7]

The *Hometrust* court correctly recognized that the defendant's position, which is identical to Century's, would render the separate indemnification provision illusory.  Indeed, under New York law, absent clear language to the contrary – which is absent here – a contractual indemnification provision applies only to third-party claims and forfeitures, not to the indemnitee's underlying claims against the indemnitor.  *See Hooper Assocs., Ltd. v. AGS Computers, Inc*., 74 N.Y.2d 487, 492 (N.Y. 1989) (finding that the indemnification provision was framed in language "typical of those which contemplate reimbursement when the indemnitee is required to pay damages on a third-party claim" and did not cover the indemnitee's direct claim against the indemnitor).  To hold that EMC's indemnification claim accrued at the time of Century's sale of the breaching loans would make the indemnification provision, Seller Guide Section 11.03.02, superfluous to the repurchase remedy.  EMC's indemnification rights under 11.03.02 could, therefore, only have been triggered by later third-party claims.

*Hometrust* is in accord with numerous other courts that have considered indemnification claims in the mortgage loan repurchase context.  For example, several judges in the United States District Court for the District of Minnesota have recognized an independent indemnification claim that (unlike a claim for breach of representations and warranties) does not accrue until liability to a third-party becomes fixed.  *See, e.g.*, *Residential Funding Co., LLC v. Acad. Mortg.*

---

[7]    The court also found persuasive the reasoning in *Lehman Brothers Holdings Inc. v. Universal American Mortgage Co., LLC*, No. 13-CV-00090-PAB-MJW, 2014 WL 3258409, at *10 (D. Colo. July 8, 2014).  In that case, the District of Colorado likewise held that plaintiff's indemnification claim was not time-barred because it did not accrue until the plaintiff made a payment to Freddie Mac.  *Id.*

*Corp.*, 59 F. Supp. 3d 935, 953 (D. Minn. 2014) (plaintiff's indemnification claim was timely because it did not accrue until plaintiff was liable for third-party claims); *Residential Funding Co., LLC v. Cmty. W. Bank, N.A.*, No. CIV. 13-3468 JRT/JJK, 2014 WL 5207485, at *10 (D. Minn. Oct. 14, 2014) (same); *Residential Funding Co., LLC v. Mortg. Outlet, Inc.*, No. 13-CV-3447 PJS/JSM, 2014 WL 4954645, at *6 (D. Minn. Oct. 1, 2014) (same); *Residential Funding Co., LLC v. Broadview Mortg. Corp.*, No. CIV. 13-3463 ADM/SER, 2014 WL 4104819, at *8 (D. Minn. Aug. 19, 2014) (same); *Residential Funding Co., LLC v. Gateway Bank, F.S.B.*, No. CIV. 13-3518 MJD/JSM, 2014 WL 3952321, at *17 (D. Minn. Aug. 13, 2014) (same); *Residential Funding Co., LLC v. Wallick & Volk, Inc.*, No. CIV. 13-3512 MJD/JJG, 2014 WL 3955257, at *5 (D. Minn. Aug. 13, 2014) (same); *Residential Funding Co., LLC v. Americash*, No. CIV. 13-3460 DSD/JJG, 2014 WL 3577312, at *6 (D. Minn. July 21, 2014) (same); *Residential Funding Co., LLC v. Mortg. Access Corp.*, No. CIV. 13-3499 DSD/FLN, 2014 WL 3577403, at *6 (D. Minn. July 21, 2014) (same); *Residential Funding Co., LLC v. Embrace Home Loans, Inc.*, 27 F. Supp. 3d 980, 987 (D. Minn. 2014) (same).[8]    Notably, Century's counsel also represented the originator-defendant in several of the foregoing cases (*Academy Mortgage Corp.*, *Americash*, *Broadview*, *Gateway*, *Mortgage Access Corp.*, and *Wallick*) where the court rejected nearly identical arguments to those Century makes in this motion.    Yet, Century fails to mention them.

The cases that Century does cite (*see* Opening Br. at 12-18) are inapplicable to this action because they do not address contractual indemnification claims like those EMC is asserting.

---

[8]    *See also SunTrust Mortg., Inc. v. Am. Pac. Home Funding, LLC*, No. 3:12CV477-JRS, 2012 WL 6561728, at *4 (E.D. Va. Dec. 14, 2012) (indemnification provision provides an independent basis for breach of contract claim); *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 198 (Del. 2009) (term "indemnity" in contract to indemnify "has a distinct legal meaning that permits the party seeking indemnification to bring a separate cause of action").

Rather, they address breach of contract claims seeking the repurchase of loans pursuant to cure or repurchase provisions.  For example, Century cites *ACE Securities Corp. v. DB Structured Products, Inc.*, 25 N.Y.3d 581 (N.Y. 2015), for the unremarkable proposition that a "cause of action for breaches of contractual representations and warranties in an MLPA will accrue on the date those representations and warranties were made."  (Opening Br. at 13.)  But the court in *Ace* did not discuss indemnification or when such claims accrue.  Instead, as Century admits (*see id.*), that case only involved repurchase claims, in which RMBS certificateholders, which were later replaced by the RMBS trust, filed a lawsuit against the securitization sponsor for breach of contractual representations and warranties.  *ACE*, 25 N.Y.3d at 589.  The New York Court of Appeals held that the RMBS trust's *breach of contract repurchase claim* accrued on the day the mortgage loan purchase agreement was executed.  *Id.* at 595-96.  As the Southern District of New York recognized in *Hometrust*, Century's reliance on *Ace* is a baseless attempt to manufacture "conflicting authority" out of an inapposite holding.  *Hometrust*, 2015 WL 5674899, at *3 ("*Ace* involved claims for the repurchase of loans, not indemnification for liability to third parties.").

Century also relies on *Deutsche Bank National Trust Co. v. Quicken Loans Inc.*, H810 F.3d 861 (2d Cir. 2015), in an attempt to establish that EMC's claims accrued when Century delivered the loans to EMC, not later.  (Opening Br. at 14.)  But like *Ace*, *Quicken* involved a breach of contract repurchase claim, not an indemnification claim.  Thus, as in *Ace*, the Second Circuit concluded in *Quicken* that the statute of limitations for the repurchase claim began to run on the date the representations and warranties became effective.  *Quicken*, 810 F.3d at 867.  Century's contention that a passing reference to indemnification in a single footnote of the *Quicken* decision suggests that a "repurchase claim and a claim for indemnification under a loan

purchase agreement are simply separate remedies and are one in the same as a breach of contract action" is without merit.  (Opening Br. at 14.)  The Second Circuit merely explained that, taken together, the repurchase protocol and indemnification provision in the operative agreement were the "sole remedies" available to the trustee for breaches of representations and warranties.  *Quicken*, 810 F.3d n.2.  That anodyne statement does not support the more radical inference, which would conflict with well-established New York law, that indemnification is merely a remedy and not a separate cause of action.  (*See* Point III *supra*.)  Indeed, *Quicken* does not, either explicitly or implicitly, discuss the nature of an indemnification claim or when it accrues.[9]

In addition, Century misstates the holding of *Lehman Brothers Holdings v. Universal American Mortgage Co., LLC*, No. 14-1180, 2016 WL 325126, at *9-*10 (10th Cir. Jan. 27, 2016), when it claims that the court "held that [plaintiff's] claim for indemnification was time-barred and accrued upon the delivery of the loans from the correspondent lender to the investor." (Opening Br. at 15.)  Century is also incorrect that this case stands for the confusing proposition that the "true nature of the claims – whether for breach of contract or indemnification under the contract – arises out of the representations and warranties made upon the delivery and sale of the loans by the correspondent lender to an investor."  *Id.* at 16.  To the contrary, a careful reading of the *Universal American* decision actually supports EMC's position.

The plaintiff in *Universal American* did not plead an indemnification claim at all; therefore, the Tenth Circuit applied existing New York law and held that plaintiff's repurchase

---

[9]    Century's argument that the court in *Quicken* held that an "Accrual Clause" similar to the one in the MLPA here did not contain a substantive condition precedent that would delay accrual of the breach of contract action (*see* Opening Br. at 19-21) is a red herring.  EMC has not alleged anything about the Accrual Clause in its Complaint because that provision relates exclusively to claims for repurchase based on breaches of the representations and warranties.  As demonstrated above, EMC has plainly asserted a timely cause of action for contractual indemnification that accrued when EMC suffered losses to the Third-Party Purchasers.

claim accrued upon the sale of the defective loans. *Universal Am.*, 2016 WL 325126, at *9, *14. In its decision, the court rejected plaintiff's *post hoc* attempts to transform its cause of action for breach of contract into one for indemnification. The court reasoned that "[plaintiff] pleaded breach of contract, *rather than indemnity*; thus, [plaintiff's] claims accrued at the closing of the sales." *Id.* at *10 (emphasis added). When plaintiff moved for summary judgment, it expressly characterized its claim as one for breach of contract. *Id.* at *11. Applying New York law, the court recognized that an indemnification claim is a "'separate substantive cause of action, independent of the underlying wrong'" and that "[plaintiff] never asserted indemnification as a cause of action distinct from the cause of action for breach of contract." *Id.* at *12. Moreover, the plaintiff never alleged payments to any third-parties. *Id.* Because of the plaintiff's deficient pleading, the court concluded that, at most, it presented indemnification as a potential remedy, not a separate cause of action. *Id.* As the court noted, "choice of a cause of action affects not only the substance of the remedies available, *but also the application of the limitations period . . . ." Id.* at *11 (emphasis added). Unlike *Universal American*, *Ace*, and *Quicken*, EMC's Complaint unambiguously asserts a claim for contractual indemnification and alleges that it made repurchases and make-whole payments to third-parties, which are covered by the indemnification provision in the MLPA and Seller Guide. (Compl. ¶¶ 6, 31, 36-42.)

Finally, Century's reliance on *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346 (2d Cir. 1986), for the proposition that an indemnification claim like EMC's is "really one for breach of contract and not a 'legitimate indemnity claim'" (Opening Br. at 17), could not be further from the mark. *Yemen* involved four different purported indemnification claims, which were dismissed for different reasons, none of which applies to the present action. The first two claims, unlike EMC's, did not involve payments to a third-party, but rather

payments from the putative indemnitee directly to the putative indemnitor. The recovery of those payments would therefore amount to a claim for traditional breach of contract damages. *Yemen*, 782 F.2d at 350. The second two claims were dismissed for the simple reason that the contract between the plaintiff and the defendant did not include an indemnification agreement and, because there was no special relationship between the parties and they were not joint tortfeasors, there was no implied right to indemnification either.[10] *Yemen*, 782 F.2d at 351-52.

Because Century ignores the fact that EMC has alleged an independent indemnification claim based on a separate contractual indemnification right, it erroneously relies on cases involving repurchase and breach of contract causes of action, rather than any cases that address express contractual indemnification claims similar to those EMC asserts in this action.

## CONCLUSION

As established above, under New York law, EMC's indemnification claims accrued when it made repurchase or make-whole payments to the Third-Party Purchasers of the mortgage loans originated by Century, *i.e.*, the Trusts and GSEs. Because the timing of those repurchase and make-whole payments is an unresolved issue of fact, Century cannot prevail on its affirmative defense that EMC's claims are untimely on any applicable statute of limitations. Accordingly, this Court should deny Century's motion.

---

[10]    Contrary to Century's assertions (Opening Br. at 17), the Tenth Circuit's discussion of *Yemen* in the *Universal American* case is *dicta* because the court had already affirmed summary judgment against the plaintiff on the ground that it "pleaded breach of contract, rather than indemnity" in its complaint. *Universal Am.*, 2016 WL 325126, at *10. In any event, the court's subsequent analysis of *Yemen* – in which the plaintiff did not have either an express or an implied right to indemnification – flowed from the primary holding that Lehman likewise did not plead a right to indemnification. It was not a broad pronouncement that where there is a valid, enforceable indemnification agreement, a plaintiff cannot maintain an indemnification claim based on third-party losses it incurred as a result of the defendant's underlying breach of contract.

For the foregoing reasons, EMC respectfully requests that the Court deny Century's motion to dismiss the complaint.

Dated: December 8, 2016
     Louisville, Kentucky

Respectfully submitted,

TACHAU MEEK PLC
Dustin E. Meek
Adam K. Neel

/s/ Dustin E. Meek
3600 National City Tower
101 South Fifth Street
Louisville, Kentucky 40202-3120
Telephone: (502) 238-9900
Telecopy: (502) 238-9910
dmeek@tachaulaw.com
aneel@tachaulaw.com

and

KAYE SCHOLER LLP
Eric N. Whitney (admitted *pro hac vice*)
Jeffrey A. Fuisz (admitted *pro hac vice*)
Aaron F. Miner (admitted *pro hac vice*)
Stephanna F. Szotkowski (admitted *pro hac vice*)
250 West 55th Street
New York, NY 10019-9710
Telephone:  (212) 836-8000
Telecopy:  (212) 836-8689
eric.whitney@kayescholer.com
jeffrey.fuisz@kayescholer.com
aaron.miner@kayescholer.com
stephanna.szotkowski@kayescholer.com

*Counsel for EMC Mortgage LLC*